UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ROBERT BOWIE,

       Plaintiff,

                          CASE NO. 05-CV-74411-DT
     v.                   JUDGE GEORGE CARAM STEEH
                          MAGISTRATE JUDGE PAUL J. KOMIVES

CITY OF LIVONIA, PATRICK MOUG,
PERTTUNNEN, and PARANELLA;

       Defendants.

_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S REQUEST FOR SANCTIONS FOR NONCOMPLIANCE AND**
**REQUEST FOR DEFAULT JUDGMENT (Doc. Ent. 23)**

*Table of Contents*

I.    **OPINION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     A.   **Background and Procedural History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     B.   **Plaintiff's Request for Sanctions for Noncompliance and Request for Default**
         **Judgment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     C.   **Fed. R. Civ. P. 55 ("Default")** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
     D.   **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
         1.    **Plaintiff's request for default judgment, to the extent it is based upon**
            **Fed. R. Civ. P. 55(b)(2), is denied.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
         2.    **Plaintiff's request for sanctions, to the extent it is based upon Fed. R.**
            **Civ. P. 37(b)(2), and defendants' request for costs and fees are denied.**
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

II.   **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

I.     **OPINION**

A.     **Background and Procedural History**

On November 18, 2005, plaintiff John Robert Bowie filed a pro se complaint against defendants City of Livonia, and officers Patrick Moug, Perttunnen (Perttunen) and Paranella (Parrinello).[1]  Compl. at 2.  The complaint is based upon plaintiff's July 2002 arrest and July 2003 acquittal.  Compl. ¶¶ 10, 12.  Specifically, plaintiff's complaint alleges (I) violation of 42 U.S.C. § 1983 (Compl. ¶¶ 13-32); (II) concert of action (Compl. ¶¶ 33-38); (III) civil conspiracy (Compl. ¶¶ 39-44) and (IV) intentional infliction of emotional distress (Compl. ¶¶ 45-49).  Plaintiff seeks declaratory relief, compensatory damages, punitive damages, injunctive relief, costs and disbursements, and any other relief to which plaintiff may be entitled.  Compl. at 9-10 ¶¶ 1-6.  On January 3, 2006, defendants filed an answer to the complaint, a demand for jury trial and affirmative defenses.

Plaintiff is now represented by counsel.  On September 19, 2006, I entered an order setting the following deadlines: witness lists to be exchanged by October 25, 2006; discovery cut-off December 26, 2006; stipulation for case evaluation due December 26, 2006; dispositive motions January 25, 2007; final pretrial order due April 30, 2007.  It also set the final pretrial conference for May 7, 2007 and the trial date (trailing docket) for May 15, 2007.

B.     **Plaintiff's Request for Sanctions for Noncompliance and Request for Default Judgment**

On or about February 21, 2006, plaintiff sent defendants a Fed. R. Civ. P. 34 request for production of documents.  Specifically, plaintiff requested the "[c]omplete personnel files of

---

[1]According to defendants' June 7, 2006 filing, the spelling of the individual defendants' names are Moug, Perttunen and Parrinello.

each of the defendants.  This is to include all reprimands, write ups, warnings and EVERYTHING contained therein said files."  He also requested "[c]opies of all reports, notes, writings, drawings, graphics, charts, photographs, phone records, documents and any other compiled data from which information can be obtained from which encounters these defendants had with me, plaintiff, John Bowie, until present."  (Doc. Ent. 15 at 3).

On March 28, 2006, plaintiff filed a motion for order to compel production of documents, disclosure and discovery.  Doc. Ent. 15.  On April 3, 2006, defendants filed an objection to request for production of document for record and police officer personnel files and motion for protective order.  (Doc. Ent. 16).

On or about April 4, 2006, plaintiff served a Rule 34 ("Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes") request seeking information regarding four dates: (1)-(3) police reports regarding and video tapes of his October 2004, September 25, 2004 and September 26, 2004 stops and detentions and (4) the police report regarding and video tape of his December 2004 encounter in the Livonia Police Station.  Doc. Ent. 23 at 10-11 (Ex. B).

On May 3, 2006, I entered an order granting in part plaintiff's motion for order to compel production of documents, disclosure and discovery (Doc. Ent. 15) and granting in part defendants' objection to request for production of document for record and police officer personnel files and motion for protective order (Doc. Ent. 16).  (Doc. Ent. 21).  In part, the opinion provided:

> Defendants shall make the appropriate portions of the individual officer defendants' personnel files available to plaintiff for inspection and copying within fourteen (14) days of the date of this order, unless an appeal is taken form this order.  Plaintiff is entitled to see information in this file concerning items such as

citizen complaints, disciplinary proceedings taken or contemplated and the results of such proceedings, if any.  However, before these files are made available to plaintiff, defendants may redact purely personal information, such as addresses, phone numbers, social security numbers, medical information, etc.  In addition, any information regarding encounters with plaintiff shall be provided.  However, plaintiff is not to disclose the information he receives except as needed for use in this case.

Doc. Ent. 21 at 4.

By a letter dated May 11, 2006, defense counsel enclosed records responsive to plaintiff's request for production of documents.  Defense counsel noted that he was "continuing to determine if there [were] other records responsive to [plaintiff's] request."  Doc. Ent. 23 at 20 (Ex. E).  Apparently, defendants provided plaintiff with an "Incident Search Result" listing six incident numbers, the dates for which are October 31, 1996; October 31, 1996; November 28, 1996; June 18, 1997; October 10, 1997 and June 22, 1998.  Although difficult to read, it appears that each incident took place at 9418 Cardwell.[2]  Doc. Ent. 23 at 23 (Ex. F).  Defendants claim that the documents produced on May 11, 2006 were documents responsive to the first requests [February 21, 2006], which fully encompassed the second requests [April 4, 2006], less the personnel records.  Doc. Ent. 27 ¶ 4.

On or about May 26, 2006, defense counsel provided plaintiff with the responsive personnel records of Moug and Parrinello.  As to Perttunen, defense counsel indicated that "no records have been located pursuant to your request."  Doc. Ent. 25 at 4.  According to plaintiff, fourteen (14) pages of personnel files were produced.  Doc. Ent. 38 at 1.

---

[2]Presumably, this is 9418 Cardwell Street, Livonia, Michigan 48150-4104.  *See* www.yahoo.com, "Maps".

4

On May 30, 2006, plaintiff filed a request for sanctions for noncompliance and request

for default judgment.  (Doc. Ent. 23).  Plaintiff relies upon Fed. R. Civ. P. 37 and Fed. R. Civ. P.

55.  He claims that "[d]efendants have not complied with [my May 3, 2006] Order, nor have they

noticed [plaintiff] regarding any appeal of th[e] Order, as of this date 5/26/2006."  Doc. Ent. 23

at 2 ¶ 2.  Plaintiff also filed an amendment and addendum to his request on June 2, 2006.  (Doc.

Ent. 25).[3]

On June 7, 2006, defendants filed a response.  (Doc. Ent. 27).  My deputy clerk noticed

the hearing on this motion for July 11, 2006.  (Doc. Ent. 28).  However, the matter was

rescheduled for August 22, 2006.  On that date, I held a hearing regarding the above-described

motion.  Plaintiff and his counsel (attorney Daniel G. Romano), were in attendance, as was

defense counsel (attorney Gregory A. Roberts).  At the conclusion of oral argument, I took the

motion under advisement.[4]

On August 25, 2006, plaintiff filed a supplement to his motion for sanctions and for

default judgment.  (Doc. Entries 37 and 38).

**C.     Fed. R. Civ. P. 55 ("Default")**

With regard to a judgment of default, Rule 55 states in pertinent part:

Judgment by default may be entered as follows:

. . .

(2) By the Court. In all other cases the party entitled to a judgment by default
shall apply to the court therefor; but no judgment by default shall be entered
against an infant or incompetent person unless represented in the action by a

---

[3]On June 5, 2006, Judge Steeh referred these requests to me for hearing and determination.
(Doc. Ent. 24).

[4]A transcript of this hearing was filed on September 1, 2006.  (Doc. Entries 39 and 40).

general guardian, committee, conservator, or other such representative who has
appeared therein. If the party against whom judgment by default is sought has
appeared in the action, the party (or, if appearing by representative, the party's
representative) shall be served with written notice of the application for judgment
at least 3 days prior to the hearing on such application. If, in order to enable the
court to enter judgment or to carry it into effect, it is necessary to take an account
or to determine the amount of damages or to establish the truth of any averment
by evidence or to make an investigation of any other matter, the court may
conduct such hearings or order such references as it deems necessary and proper
and shall accord a right of trial by jury to the parties when and as required by any
statute of the United States.

Fed. R. Civ. P. 55(b)(2).  "Rule 55(b)(2) allows the court in its discretion to enter a judgment of

default where the party entitled to the judgment applies to the court, and if the party against

whom it is sought has appeared in the matter, that party must be served written notice of the

application at least three days prior to the hearing on such application."  *United States v. Ragin*,

No. 94-1970, 1997 WL 268576, **2 (4th Cir. May 21, 1997) (citing Fed. R. Civ. P. 55(b)(2)).

"Judgments by default are a drastic remedy and should be resorted to only in extreme situations."

*Charlton L. Davis & Co., P. C. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir. 1977)

(citing *E. F. Hutton & Company, Inc. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972)).  *See also*

*Affanato v. Merrill Bros.*, 547 F.2d 138, 140 (1st Cir. 1977).

**D.    Analysis**

**1.    Plaintiff's request for default judgment, to the extent it is based upon Fed. R. Civ. P.
55(b)(2), is denied.**

Plaintiff's May 30, 2006 motion takes issue with defendants' response to my May 3,

2006 order which compelled defendants to provide plaintiff with redacted personnel files and

information regarding encounters with plaintiff.  His June 2, 2006 amendment and addendum

was apparently filed in response to defendants' May 26, 2006 provision of Officer Moug and

Officer Parrinello's personnel records.  Doc. Ent. 25 Ex. 1 (May 26, 2006 letter from Gregory A.

6

Roberts to plaintiff).  Based upon the motion papers, there are three areas in dispute: the

personnel files, the incident reports and the video tapes.[5]

**a.      DEFENDANTS MOUG, PARRINELLO & PERTTUNEN'S PERSONNEL FILES:**

Plaintiff takes issue with the timeliness and completeness of defendants' production of

defendants Moug, Perttunen and Parrinello's personnel files.  With respect to timeliness, the

Court is in possession of the July 6, 2006 affidavit of Sgt. Cindy Stapleton, the Livonia Police

Department records production support officer.  According to Stapleton, she "suffered a medical

emergency at work on May 8, 2006 that led to [her] hospitalization from May 8, 2006 to May 30,

2006 for a burst appendix."  She also states that "[u]pon being informed of my hospitalization by

the City Attorney's office, Mr. Roberts was directed to contact a Department Lieutenant who

completed the record compilation."  She further states that her "sudden and lengthy unpublicized

hospitalization of a life threatening condition led to the slight delay in arranging production of

the records requested by Mr. Roberts."  Defense counsel claims to have received the personnel

records of Moug, Parrinello and Perttunen on May 25, 2006.  Doc. Ent. 25 Ex. 1.  Via a May 26,

2006 letter, defense counsel enclosed the responsive personnel records of Moug and Parrinello.

As to Perttunen, defense counsel indicated that "no records have been located pursuant to your

request."  Plaintiff claims to have mailed the instant motion on May 26, 2006.  Doc. Ent. 25 at 2

¶ 1.[6]  He claims to have received defense counsel's May 26, 2006 letter on May 27, 2006 in his

---

[5]Defendants contend that the information in the first [February 21, 2006] request fully
encompassed the information sought in the second [April 4, 2006] request and "those documents,
less the personnel records, were provided on or about May 11, 2006."  Doc. Ent. 27 at 2 ¶ 4.

[6]According to the proof of service, the materials were personally served upon defense
counsel on May 26, 2006.  Doc. Ent. 23 at 24.

7

mailbox in an unstamped envelope.  Defendants contend that the items "were hand delivered to

Plaintiff's residence on May 26, 2006 by a CMDA paralegal."  Doc. Ent. 27 at 2 ¶ 2.

Although responses covered by my May 3, 2006 order were due on May 17, 2006, I do

not find the nine or ten day delay offensive in light of the alleged circumstances.  As I said

during the August 22, 2006 motion hearing, "I don't think the issue is going to turn on a matter

of a few days here or there.  I'm more concerned with the substance . . . as to whether discovery

was furnished that should have been furnished or not, and I'll be focusing of course on my

previous order."  Doc. Entries 39 and 40 at 40-41.

With respect to the completeness of the personnel records, Plaintiff states: "I do not

believe that Officer Gregory Perttunen['s] personnel file [cannot] be located[,]" and "of the

personnel files that were inadequately provided, some of those documents were duplicated &

triplicated, in an obvious and sinister attempt to cover up other documents being left out."  Doc.

Ent. 25 at 2-3 ¶¶ 6, 9.

According to defendants, my May 3, 2006 order restricted "the provision of the personnel

file records to 'citizens complaints, disciplinary proceedings taken or contemplated and the

results of such proceedings if any.'" Doc. Ent. 27 ¶ 1.  Defendants maintain that "[o]nly two of

the three officers had relevant records in their personnel file.  The third officer had no citizen

complaints, disciplinary records or proceedings so no records were provided[.]" Doc. Ent. 27 at

8.

By his August 25, 2006 supplemental brief, plaintiff has brought to the Court's attention

that the three individual police officer defendants have previously been party to litigation in this

Court.  Gregory Perttunen was a party to Case No. 89-CV-72418-BAF, *Nicklay v. City of*

*Livonia*. Patrick Moug was a party to Case No. 93-CV-72372-RED, *Blanks v. City of Livonia*.
Also, David Parrinello was a party to Case No. 96-CV-71429-HWG, *Stobbe v. City of Livonia*.
According to the Court's case management system, the nature of suit for each of these three
cases was civil rights. Based upon the existence of these cases, plaintiff states: "It seems curious
that Defendants who were sued in their official capacity as police officers would have nothing in
their police personnel file to indicate these lawsuits were brought." Plaintiff contends that "[t]his
is further evidence that Defendant has withheld evidence from its response to requests to produce
and should be held in Default." Plaintiff contends that if the aforementioned lawsuits "were
brought against these officers and there is no reference to same in their personnel files or Livonia
City records, this is evidence of an unlawful custom and practice of withholding civil litigation
from city records, which would prejudice Plaintiffs in proving their cases." Doc. Ent. 38 at 2.

Based upon plaintiff's counsel's argument at the August 22, 2006 motion hearing, the
dispute between the parties is as follows: "Upon explanation by counsel for defense, its's told to
us that the file has been not produced because the file exists; however, the Court ordered not the
file to be produced, but only the file that has to do with citizens' complaints or disciplinary
actions. I don't believe that's the reading of the rule. And in fact . . . the order said to – to
produce the personnel files with redacted personal information . . . not to pick and choose what
out of the file they're going to give to us." Doc. Entries 39 and 40 at 5. At the August 22, 2006
hearing, plaintiff's counsel stated that plaintiff has not received a single page of defendant
Pertunnen's personnel file and that defendants's production of Moug and Parrinello's personnel
files was incomplete, for example, incomplete copies of multi-paged items or an inadequate
number of performance reviews. Doc. Entries 39 and 40 at 9-10.

At the August 22, 2006 motion hearing, defense counsel stated that the personnel files contain performance information and citizen congratulations.  Doc. Entries 39 and 40 at 21.  As defense counsel said at the hearing, "Here's the files.  Give him whatever you want out of them. I don't want him to have Social Security numbers, personal information, family information, insurance information, other things that are in these files."  Doc. Entries 39 and 40 at 38.

I have taken into consideration the parties' dispute over the meaning of my May 3, 2006 order and the wording of that order.  I conclude that there is an honest disagreement about the meaning of my order - whether it required total production with personal information redacted or production of just citizen complaints, disciplinary matters and the like with personal information redacted.  Therefore, entry of default judgment would not be appropriate based upon defendants' production of the personnel files.

However, I conclude that defendants should produce the complete personnel files of the three individual officers with personal information redacted, either by providing plaintiff with copies of such information or an opportunity to inspect and copy such information.  This conclusion is consistent with defense counsel's representation that plaintiff can have the personnel files minus the private information.  This remedy should also address plaintiff's concerns that he received only portions of letters from the officers' personnel files.  Doc. Entries 39 and 40 at 34, 39.  In accordance with this ruling, the parties' suggestion of an in camera review of the three personnel files is declined.  Doc. Entries 39 and 40 at 21, 35.

**b.**     **VIDEO TAPES OF OCTOBER 2004; SEPTEMBER 25 & 26, 2004 and DECEMBER 2004:**  Defendants contend that "Livonia Police Department vehicles and the station have video camera capability and police activity within the camera field of view is

routinely taped.  This does not constitute all activity."  Doc. Ent. 27 at 6-7.  They also contend

that "videotape is not archived and absent evidentiary utility all tape is held only thirty (30) days.

No tape of Plaintiff exists and if it did it would have been provided with the May 11, 2006

document disclosure."  Doc. Ent. 27 at 7.  This argument was repeated at the motion hearing.

Doc. Entries 39 and 40 at 20.

      I find no reason to doubt defendants' representation that video tapes responsive to

plaintiff's requests do not exist.  Therefore, entry of default judgment would not be appropriate

on this basis either.

**c.**    **INFORMATION REGARDING ENCOUNTERS WITH PLAINTIFF, SUCH AS**

**INCIDENT REPORTS:**  According to plaintiff, he received 182 pages of documents, and these

papers were "disorganized, duplicated, incomplete, illegible and slipshod."  Doc. Ent. 23 at 13.

He also contends that several items were missing: (A) Pages 7 - 57 of the original police report;

(B) incident reports from September 25, 2004, September 26, 2004 and October 2004;[7] (C)

Report #1338, "From the day [plaintiff] went into the Livonia Police Station to report suspicious

debris thrown in my yard a second time[;]" (D) an incident search report for Andrew Grifka

---

[7]Plaintiff's April 4, 2006 request number 4 sought a copy of any police report involving his December 2004 encounter with defendant Moug at the Livonia Police Station.  Doc. Ent. 23 at 11. The motion contends that defendants have not responded to the April 4, 2006 requests.  Doc. Ent. 23 at 2 ¶ 5.

    Defendants respond that "the records provided on May 11 comprise all records located to date concerning [plaintiff]."  Doc. Ent. 27 ¶ 5.  Defendants contend that "Plaintiff was not arrested or ticketed on any of the four occasions he seeks police reports for review.  With no arrest or ticket, no police reports were generated or exist."  Doc. Ent. 27 at 7.

    The instant motion only mentions the absence of the September 25, 2004, September 26, 2004 and October 2004 incident reports.  Doc. Ent. 23 at 3 ¶ 14(B).  Therefore, this order does not address the alleged absence of the December 2004 incident report.

(neighbor); and (E) an incident search report for plaintiff.  Doc. Ent. 23 at 3 ¶ 14; Doc. Entries 39 and 40 at 4, 11.

Defendants explain that "police files sometimes contain duplicates of reports or records." Doc. Ent. 27 ¶ 13.  As to items (A) - (C), defendants respond:  (A) "Documents in the Livonia Police Department related to the report, presumably Plaintiff's prosecution for the dog poisoning, have been provided[.]  The Plaintiff is in possession of a report that was provided to his attorney during the prosecution[;]"[8] (B) incident reports from September 25, 2004, September 26, 2004 and October 2004 do not exist; and (C) if report # 1338 exists, it "is not related to, any request Plaintiff has made[.]"  Doc. Ent. 27 at 4 ¶¶ 14(A)-14(C).  Defendants further contend that "Plaintiff was not arrested or ticketed on any of the four occasions he seeks police reports for review.  With no arrest or ticket, no police reports were generated or exist."  Doc. Ent. 27 at 7.

Plaintiff disputes the absence of reports from September 25, 2004, September 26, 2004 and October 2004, because "Plaintiff was stopped by a police officer, approached by a police officer, yelled at by a police officer, questioned by a police officer, not arrested or confined, but certainly there has to be some record of that incident because whether it's a run sheet or whether there is a log sheet or whether there is some kind of documentation for an encounter with an individual, either through the dispatch record or something, and yet nothing's produced, and it was ordered to be so."  Doc. Entries 39 and 40 at 6-7.

---

[8]Defense counsel states that the police reports concerning plaintiff's prosecution "are believed to already be in the Plaintiff's possession [and] involve events that are not at issue in the litigation."  Further, defendants submit that "Plaintiff may also fail to distinguish between Livonia Police Department records and those which may have been compiled or made by the Wayne County Prosecuting attorney and are not LPD's records."  Doc. Ent. 27 at 7.

Defendants contend that the 182 documents are comprised of "discoverable records such as police reports, known contacts with the Plaintiff, [FOIA] requests[.]" Doc. Entries 39 and 40 at 17.  Defense counsel contends that "there's no pagination in the police files[;]" therefore, he does not know what plaintiff is talking about with respect to pages 7-57 of the original police report.  Doc. Entries 39 and 40 at 18.  Defense counsel also represented that the Livonia Police Department does not "have incident reports going back years ago for issues that didn't involve arrest, didn't involve citations, didn't involve ticketing."  Defense counsel suggests that plaintiff's post-acquittal picketing in a bunny suit against complaining witnesses were such incidents.  Doc. Entries 39 and 40 at 19-20.  He also contends that the department does not have an incident report 1338.  Doc. Entries 39 and 40 at 20.  According to defense counsel, these 182 documents are all he has.  Doc. Entries 39 and 40 at 23.  Defense counsel contends that, other than minor non-events, "every contact we had with Mr. Bowie is in the 182 documents I already gave him."  Doc. Entries 39 and 40 at 24.

On rebuttal, plaintiff's counsel called into question the City of Livonia's record keeping. Doc. Entries 39 and 40 at 26.  As an example, he points to differences between the necropsy report plaintiff subpoenaed directly from MSU and the one from the police report produced by defendant City of Livonia.  Doc. Entries 39 and 40 at 26-31.  He also points out that the 182-page production contains documents from 2002, 2003 and 2004, so clearly the City of Livonia keeps incident reports from 2004.  Doc. Entries 39 and 40 at 27.  In another example, plaintiff's counsel contends that plaintiff was wearing a bunny suit on September 25 and 26, 2004 and October 4, 2004 and suspects that written records exist as to these incidents, because defendants knew plaintiff was wearing a bunny suit.  Doc. Entries 39 and 40 at 31-32, 39-40.  According to

13

plaintiff's counsel, the underlying claims in this case are those three incidents and if documentation on them was not retained beyond a certain point, "there should be some presumption held against the Defendants for not keeping those records[,]" because, counsel explained, plaintiff knows of someone who witnessed Pertunnen screaming at plaintiff during one of these "non-events". Doc. Entries 39 and 40 at 32-33. Plaintiff contends that he obtained the incident report number (1338) from the police department. Doc. Entries 39 and 40 at 35, 39. He also contends that incident 1338 is the defendant City of Livonia's report number, so it is ridiculous to say that the report does not exist. Plaintiff needs to identify witnesses and claims he is prejudiced in his effort to proceed with the case if he does not have the information from the incident report(s). Doc. Entries 39 and 40 at 35.

 Having considered these arguments, entry of default judgment here too is not warranted. Nonetheless, with respect to some of the categories listed in paragraph fourteen (14) of plaintiff's motion, he is entitled to further response. To begin with the incident search reports, defendants shall provide such a report for plaintiff and such a report for Grifka.[9] Such a report would presumably reveal whether incident reports exist from September 25, 2004, September 26, 2004 or October 2004. If the reports reveal nothing, then plaintiff should be provided with a

---

[9]According to defendants, plaintiff's request does not mention incident reports concerning Grifka. Doc. Ent. 39 and 40 at 19. Without reviewing the language of plaintiff's request(s) for incident reports, the Court notes that Andrew Grifka is listed as a witness on defendants' October 25, 2006 witness list. Doc. Ent. 43 ¶ 19. The Court will construe the motion's request for an incident search report on Grifka as a request for production of documents for several reasons: (1) Deference to plaintiff's pro se status at the time his May 30, 2006 motion and June 2, 2006 supplement to the motion were filed; (2) the period set forth for discovery does not end until December 26, 2006 (Doc. Ent. 41 at 1) and (3) although defendants state that "Mr. Grifka is not a party nor is such a document, if it exists, related to any request Plaintiff has made[,]" Doc. Ent. 27 at 4 ¶ 14(D), defendants have not objected on the basis that this request seeks irrelevant information (Doc. Entries 39 and 40 at 19).

14

copy of the "fruitless" report or an affidavit from someone other than counsel that the requested records do not exist.[10]

As to pages 7-57 of the original police report, defense counsel twice stated "I don't know what [plaintiff's] talking about[.]" Doc. Entries 39 and 40 at 18. Defense counsel suggested that another "public entity concerned with [plaintiff's] prosecution may have produced documents." Doc. Entries 39 and 40 at 18. He also claims that "we don't paginate any documents like that at the police department[.]" Doc. Entries 39 and 40 at 19. As to 1338, defense counsel has stated "[w]e don't have any incident report 1338[.]" Doc. Entries 39 and 40 at 20.[11] Although the Court acknowledges plaintiff's counsel's argument contending that 1338 - the City of Livonia's incident number - exists (Doc. Entries 39 and 40 at 35), the Court cannot order defendant City of Livonia to produce what it states it does not have. Doc. Entries 39 and 40 at 19. To the extent that pages 7-57 of the original police report and incident report number 1338 do not exist, defendants shall provide a statement to that effect signed by someone other than counsel.

2.    **Plaintiff's request for sanctions, to the extent it is based upon Fed. R. Civ. P. 37(b)(2), and defendants' request for costs and fees are denied.**

Plaintiff seeks $1,000 in sanctions for noncompliance, as well as entry of default judgment. Doc. Ent. 23 at 4; Doc. Ent. 25 at 3. Plaintiff takes issue with defendants and defense counsel's actions during the lawsuit and discovery. Doc. Ent. 23 ¶¶ 6-12, 16. In part, plaintiff claims that defendants' inadequate production of the personnel file documents included duplicate

---

[10]Plaintiff claims that the six-line incident report he received was not legible. Doc. Ent. 23 at 3 ¶ 14(F). Defendants claim that they provided the incident search report for plaintiff. Doc. Ent. 27 at 4 ¶ 14(E). If the six-line incident report apparently produced on May 11, 2006 is the incident search report for Mr. Bowie, then it should be so labeled.

[11]Whatever else defense counsel was going to say about incident report 1338 is not intelligible from the record. Doc. Entries 39 and 40 at 40.

and triplicate documents "in an obvious and sinister attempt to cover up other documents being left out."  Doc. Ent. 25 at 3 ¶ 9.

Although plaintiff's motion cites Fed. R. Civ. P. 37(b)(2)(E), Doc. Ent. 23 ¶ 3, it appears that plaintiff's request for sanctions, both monetary and entry of default judgment, should be based upon Fed. R. Civ. P. 37(b)(2).  It provides, in pertinent part, that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . . (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]" Fed. R. Civ. P. 37(b)(2)(C).  The rule further provides that "[i]n lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2).

During the August 22, 2006, plaintiff's counsel suggested that if the incident reports (or run sheets, dispatch logs, etc.) don't exist, "then there should be some sort of presumption ordered as a sanction by this Court that they either destroyed the file, they didn't produce the file, they didn't record the incident, and a presumption should be offered that Plaintiff's rendition of what took place on 9-25 and 9-26 and 10-04-04 are to be presumed true."  Doc. Entries 39 and 40 at 8.  Plaintiff's counsel contended that "sanctions are in order."  Doc. Entries 39 and 40 at 34-35.

16

As to the lack of enumeration in its May 11, 2006 document production, defendants contend that the second part of plaintiff's February 21, 2006 requests "lumped <u>all</u> the sought after records (except the personnel files) in one long paragraph and [plaintiff] received the documents in a group fully responsive because he had not enumerated separate requests for the records." Doc. Ent. 27 at 3 ¶ 12, 6. Defendants deny plaintiff's allegation that they do not have an intention to appropriately comply with discovery requests or to communicate with plaintiff, despite Fed. R. Civ. P. 26 and E. D. Mich. LR 7.1. Doc. Ent. 23 ¶ 16; Doc. Ent. 27 ¶ 16. Defendants contend that Fed. R. Civ. P. 37(a)(4)(A) sanctions or expenses would not be appropriate, because plaintiff's May 26, 2006 phone call did not comply with E. D. Mich. LR 7.1(a); plaintiff did not comply with E. D. Mich. LR 7.1(c)(1)(A); and "Plaintiff has not been prejudiced[.]" Doc. Ent. 27 at 9-10. Defendants argue that "Plaintiff should be fined in the amount necessary to reimburse Livonia for their costs and fees associated with defending this abusive motion." Doc. Ent. 27 at 10.

However, based upon my conclusion that there was an honest dispute as to the meaning of my May 3, 2006 order, my conclusion that there is no reason to doubt defendants' representation that there are no videotapes responsive to plaintiff's requests, and my conclusion that some discovery requests warranted a further response while others did not, the parties' requests for sanctions, whether in the form of monetary reimbursement or default judgment, are denied.

## II.   ORDER

In accordance with the foregoing, plaintiff's May 30, 2006 request for sanctions for noncompliance and request for default judgment (Doc. Ent. 23) is DENIED. However,

17

consistent with Section I.D.1.a of this opinion and within ten (10) days of the date of this order, defendants shall provide plaintiff with the complete personnel files of the three individual officers with personal information redacted, either by providing plaintiff with copies of such information or an opportunity to inspect and copy such information.  As was the case with my May 3, 2006 order, plaintiff is not to disclose the personnel file information he receives except as needed for use in this case.

Also, consistent with Section I.D.1.c of this opinion and within ten (10) days of the date of this order, defendants shall provide plaintiff with the incident reports for plaintiff and Grifka (either by providing plaintiff with copies of such information or an opportunity to inspect and copy such information) or with a statement signed by someone other than counsel that such documents do not exist.  To the extent that pages 7-57 of the original police report and incident report number 1338 do not exist, defendants shall provide plaintiff with a statement to that effect signed by someone other than counsel.

As is always the case, defendants have a duty to supplement their responses consistent with Fed. R. Civ. P. 26(e).

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/14/06

18

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on November 14, 2006.

s/Eddrey Butts
Case Manager