UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN R. BOWIE,

       Plaintiff,

vs.

Case No. 05-CV-74411
HON. GEORGE CARAM STEEH

CITY OF LIVONIA, a/k/a CITY OF LIVONIA
POLICE DEPARTMENT; OFFICER PATRICK
MOUG, in his individual and official capacities;
OFFICER PERTTUNNEN, Badge No. 358, in his
Individual and official capacities; OFFICER
PARANELLA, in his individual and official
capacities, jointly and serverally,

       Defendants.

_____/

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#46)

In this § 1983 case, Plaintiff, a resident of Livonia, Michigan, filed a four-count Pro Per Complaint against the Defendants City of Livonia, City of Livonia Police Department, Sergeant Patrick Moug, Officer Gary Perttunnen and Officer David Parinello. Plaintiff alleges the three Officers violated Plaintiff's constitutional rights in several incidents between 2002 to 2004. Plaintiff also alleges municipal liability against the City of Livonia as well as state torts of assault and battery, false imprisonment, and infliction of emotional distress.

**I. Background**

Plaintiff had a contentious relationship with his neighbors. In July 2002, Plaintiff's neighbors accused him of poisoning their dogs. Plaintiff was arrested, detained by the

Livonia Police Department on July 24, 2002, and charged with animal cruelty violations. Sergeant Patrick Moug was the officer in charge of the case. In July of 2003, after Plaintiff was acquitted, he claimed Moug threatened him in front of the Frank Murphy Hall of Justice in Detroit, Michigan, saying he would be "seeing Moug around."

After November 2003, Plaintiff began picketing for animals' rights in Livonia, sometimes wearing a giant pink bunny suit. On September 26th, 2004, the residents complained of Plaintiff's behavior to an officer not named in this lawsuit, and indicated their intentions to obtain a Personal Protection Order.

In September or October, 2004, Pertunnen was dispatched to a call from a bank, complaining of an unknown individual dressed as a giant rabbit who may be suspicious. Pertunnen stopped and questioned the giant rabbit, who identified himself as Plaintiff. Pertunnen warned Plaintiff not to return to the bank or he may be arrested. Plaintiff alleges that Pertunnen threatened to "find a way to have [Plaintiff] arrested again." Pertunnen attests that bank robbers sometimes use disguises and that he detained Plaintiff long enough to identify Plaintiff and determine whether Plaintiff may pose a threat to the public.

On or about September 26, 2004, Parinello was on patrol in a residential area of Livonia, looking for a wild coyote. Parinello saw a grown man, dressed as a giant pink rabbit, who appeared "bizarre and unusual." After Plaintiff identified himself, Parinello suspected that he may be armed or under the influence of alcohol or controlled substances. Parinello patted down Plaintiff, in a manner Plaintiff claims to be "excessively rough, intrusive, and hostile," including "a thorough search in and around Plaintiff's groin area." After a short questioning, Parinello left the scene. Subsequently, Parinello saw Plaintiff dressed again as a giant rabbit and took no action at all.

In or around December 2004, Plaintiff went to the police station to fill out a police report. Moug was present, and Plaintiff alleges that Moug said Plaintiff was "F--ked."

The officers made no ticket, police report, or notes as a result of these encounters with Plaintiff, explaining that the contacts were inadvertent and without enforcement activity. Plaintiff has not alleged any further contact with the Livonia Police Department or its officers. Defendants deny any campaign of harassment, surveillance, or other police activity targeting Plaintiff.

Defendants now move for summary judgment. During the July 11, 2007 motion hearing, Plaintiff's Counsel conceded that Plaintiff's claims regarding his arrest and detention for the animal-cruelty charge are time-barred. Instead, Counsel advanced Plaintiff's claims of constitutional violations on the subsequent encounters with the officers.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether

3

it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### III. Analysis

### A. Plaintiff's § 1983 claims against the police officers

To prevail on a § 1983 claim, Plaintiff must allege that some person, acting under color of state law, has deprived him of a federal right. Davey v. Tomlinson, 627 F. Supp.

1458, 1463 (E.D. Mich. 1986). Here, Plaintiff claims the Defendants deprived him of his First and Fourth Amendment rights, and engaged in a conspiracy to violate those rights.

### 1. Plaintiff's First Amendment claim

While Plaintiff alleges a First Amendment violation in his complaint, Plaintiff does not plead or establish any elements of a First Amendment claim. The record does not support a violation of Plaintiff's First Amendment rights. Defendants are entitled to summary judgment of Plaintiff's First Amendment claim as a matter of law. Amway Distributors, 323 F.3d at 390.

### 2. Plaintiff's Fourth Amendment claims

#### a. Plaintiff's search and seizure claim

Stopping a subject for questioning and patting him down is a Fourth Amendment search and seizure. See Terry v. Ohio, 392 U.S. 1, 19-20 (1960) (finding "search and seizure" where officer "seized" plaintiff and subjected him to a pat down "search"). "[W]hether a seizure has occurred is whether a reasonable person would feel free to leave." Adams v. Metiva, 31 F.3d 375, 383 (6th Cir. 1994). Because a Terry stop is not an arrest, a police officer's reasons for conducting a Terry stop do not receive constitutional scrutiny as stringent as the reasons for an arrest. Terry, 392 U.S. at 20-21. What begins as a Terry stop may ripen into a full arrest through the passage of time or the use of force. See U.S. v. Sharpe, 470 U.S. 675, 685-86 (1985). A Terry stop may legitimately evolve into an arrest where it gives rise to probable cause that the subject of the stop has committed a crime. Terry, 392 U.S. at 10.

Here, the classification of Plaintiff's detention as a Terry stop or an arrest is important because it determines the appropriate standard for evaluating the Officers'

conduct. On this record, it would be unreasonable to interpret Plaintiff's encounters with Parinello and Pertunnen as more than investigatory searches. Plaintiff does not allege he was detained for longer than a few minutes. Further, Plaintiff alleges nothing else during the investigatory stops besides some questioning and an allegedly "rough" pat down. Plaintiff has failed to come forward with evidence that could support a finding that he was arrested during the incidents in question. First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. Parinello's and Pertunnen's brief detentions of Plaintiff were Terry stops as a matter of law. Amway Distributors, 323 F.3d at 390.

For a Terry stop to be constitutional under the Fourth Amendment, the officer must have a reasonable suspicion that the subject was connected with criminal activity. Terry, 392 U.S. at 10. "Reasonable suspicion is not even equal to a finding of probable cause. Rather, reasonable suspicion requires only specific objective facts upon which a prudent official, in light of his experience, would conclude that illicit activity might be in progress." Spear v. Sowders, 71 F.3d 626, 631 (6th Cir. 1995). Conversely, an arrest requires probable cause that a crime has been committed. Adams v. Metiva, 31 F.3d at 383.

Here, having received a phone call from a bank complaining of a man in a giant pink rabbit costume, and reasonably believing that bank robbers may wear a disguise to avoid identification, it was reasonable for Pertunnen to be suspicious that criminal activity was afoot. Considering that Plaintiff was dressed in a giant pink rabbit costume in a residential neighborhood, during the Fall when such a fashion statement is not quite in vogue, it was also reasonable for Parinello to suspect that Plaintiff was intoxicated, perhaps even armed, and posed a threat to himself and the public. Pertunnen's detainment, questioning, and pat-down of Plaintiff was a constitutional Terry stop as a matter of law. Amway Distributors,

323 F.3d at 390.

### c. Plaintiff's excessive force claim

Plaintiff alleges that Parinello's pat-down search employed excessive force violative of the Fourth Amendment. The appropriate standard of review is one of objective reasonableness under the circumstances. Graham v. Connor, 490 U.S. 386, 396-97 (1989). This standard is an objective one without regard to the officers' underlying intent or motivation, and requires "careful attention to the facts and circumstances of each particular case." Adams v. Metiva, 31 F.3d at 385. "[T]he right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. at 396. Minor uses of force may be unconstitutionally excessive when such use is "totally gratuitous." McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988).

Here, Plaintiff alleges Parinello patted him down in an "excessively rough, intrusive, and hostile manner," including "a thorough search in and around Plaintiff's groin area." Plaintiff's allegation of excessive force is conclusory and is unsupported by factual evidence. First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. To effectuate a lawful investigatory Terry stop, Parinello was authorized to apply reasonable force to effectuate his investigation. Graham v. Connor, 490 U.S. at 396. Plaintiff has not come forward with evidence indicating that Parinello's actions were gratuitous or otherwise did and comport with a legitimated investigatory frisk. McDowell v. Rogers, 863 F.2d at 1307; Terry, 393 U.S. at 17 n. 13 ("[T]he officer must feel with sensitive fingers ever portion of the prisoner's body. A thorough search must be made of the prisoner's . . . groin and area about the testicles."). Plaintiff's excessive force claim fails as a matter of law. Amway

Distributors, 323 F.3d at 390.

### 3. Plaintiff's civil conspiracy claim

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985). Plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainants." Id. An actual deprivation of rights is necessary to find civil conspiracy. See, e.g., Askew v. Millerd, 191 F.3d 953 (8th Cir. 1999) (defendant entitled to judgment on conspiracy claim where no constitutional deprivation was proven and the jury found no excessive force or denial of medical treatment). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a [conspiracy] claim under § 1983." Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987). Because there is rarely direct evidence of an agreement among all conspirators, the complainant may use circumstantial evidence to provide adequate proof of a conspiracy. Weberg v. Franks, 229 F.3d 514, 528 (6th Cir. 2000).

Here, Plaintiff fails to establish an actual deprivation of rights, i.e., an unconstitutional stop and search under the Fourth Amendment requisite to his civil conspiracy claim. The record also fails to support a civil conspiracy claim. Plaintiff fails to proffer any direct or circumstantial evidence of a civil conspiracy. First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. Plaintiff has not been arrested by the Livonia Police Department since his acquittal in July of 2002 on the animal cruelty charges. Pertunnen denies knowing or ever seeing Plaintiff before encountering him in his bunny suit. Likewise, Parinello denies knowing Plaintiff before the Terry stop. The only time that Plaintiff has seen Moug since

8

the acquittal was when Plaintiff went to the Police Station. Beside the two Terry stops and one encounter with Officer Moug, there is no material evidence of any contact between Plaintiff and the Livonia Police Department, or any arrest or harassment of Plaintiff. Defendants are entitled to summary judgment of Plaintiff's federal conspiracy claim as a matter of law. Amway Distributors, 323 F.3d at 390.

### 4. Qualified immunity analysis

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court describes a two-prong test: 1) whether a constitutional right would have been violated on the facts alleged, 2) whether the right was clearly established, i.e., whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). If no constitutional rights were violated, there is no necessity to proceed to the second prong of the qualified immunity analysis. Id. at 201. Because there was no constitutional violation, the court need proceed no further under a qualified immunity analysis.

## B. Plaintiff failed to establish a § 1983 claim against the city of Livonia

Local government may be liable as an entity under § 1983 when "execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 694 (1978). To find municipal liability, the Plaintiff must "identify the policy, connect the policy to the city itself and show that the particular

injury was incurred because of the execution of that policy." Gardner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1983). Additionally, Plaintiff must prove that: 1) "the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter," and 2) "such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc., 32 F.3d 989, 996 n. 8 (6th Cir. 1994).

Proving municipal liability does not require proof of the policymaker's actual knowledge of an unconstitutional policy or custom where Plaintiff can bring forth sufficient evidence to demonstrate a widespread or significant practice allowing an inference of constructive knowledge. See Leach v. Shelby County Sheriff, 891 F.2d 1241, 1247 (6th Cir. 1989) (finding constructive knowledge sufficient for municipal liability where the jail provided same type of unconstitutional treatment provided to defendant was provided to at least 14 other paraplegics).

Plaintiff has failed to proffer any evidence suggesting that the City of Livonia has a policy, practice, or custom of restricting one's right to peaceful protest violative of the First Amendment, or of performing unreasonable searches and seizures with excessive force violative of the Fourth Amendment. First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. Plaintiff has failed to establish an actionable § 1983 claim against the City of Livonia as a matter of law. Amway Distributors, 323 F.3d at 390.

**C. Plaintiff's pendant state claims**

Because Plaintiff has failed to establish any actionable federal claims, this Court declines to exercise supplemental jurisdiction over any state law claims he may have. See

28 U.S.C. § 1367(c). Plaintiff's state law claims will be dismissed without prejudice.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment is hereby GRANTED. Plaintiff's federal claims of constitutional violations actionable under 42 U.S.C. § 1983, concert of action, and civil conspiracy as set forth in Counts I, II, and III are hereby DISMISSED with prejudice. Bowie's state law claims of assault and battery, concert of action, civil conspiracy, and intentional infliction of emotional distress as set forth in Counts I, II, III, and IV are hereby DISMISSED without prejudice.

SO ORDERED.

Dated: July 17, 2007

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 17, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk